# EDISON ELECTRIC LIGHT & POWER COMPANY OF ST. PAUL and Another v. WILLIAM J. BLOMQUIST.[1]

February 11, 1910.

Nos. 16,449—(197[2], 1[3]).

**Moving Building on Public Street — License.**

The use of the streets of a city for moving houses is an unusual and extraordinary use, and they cannot be so employed by a house mover without permission from the city authorities.

**Same — Ordinance.**

The house-movers ordinance of the city of St. Paul provides that a building may be removed from one lot to another outside the fire limits, and that no person except a licensed house mover shall move any building within the city limits; that the party applying for a license shall give a bond conditioned to indemnify the city for damages, and upon the execution and approval of the bond that a license shall be issued by obtaining a permit from the commissioner of public works, which shall state all the conditions, prescribe the route to be taken, and limit the time.

**Same — Injunction Justified.**

Appellant secured a permit to move a frame house along certain streets, and the permit contained the following restrictions: "This permit does not allow interference with wires or any other obstructions on the above route." *Held*, respondents having been lawfully in possession of the streets with their wires and lamps at the time of the issuing of the permit, appellant's right to the use of the streets was limited as provided by the permit, and that he possessed no legal right to interfere with the wires and lamps for the purpose of moving the house; that the trial court was justified in enjoining appellant from such interference, except upon the condition that appellant give respondent reasonable notice to remove its wires; and that appellant execute a bond to pay the reasonable expense thereof.

Action in the district court for Ramsey county by Edison Electric Light & Power Company and St. Paul Gaslight Company to restrain defendants from moving certain buildings on certain streets in the

[1]Reported in 124 N. W. 969, 125 N. W. 895.
[2]October, 1909, term calendar.
[3]April, 1910, term calendar.

city of St. Paul, and pending the determination of the action for a temporary injunction.

The complaint alleged that pursuant to certain ordinances of the common council of that city plaintiff companies, engaged in the manufacture and distribution of electric current to the city and its inhabitants, had a vested contract right to maintain poles, wires and conduits without being required to cut or remove wires or conduits for the purpose of permitting the moving of buildings through the streets of the city; that defendant Johnston was the owner of three certain dwelling houses and that defendant Blomquist had contracted to move them from their present location to new locations on Walnut street, and in order to move said buildings it would be necessary to cut and temporarily remove certain specified arc lights, wires and equipment belonging to plaintiffs and maintained either under a lighting contract with the city or for the purpose of supplying light and power to factories, stores, churches, dwellings, schools and hotels therein.

The answer of defendant Blomquist alleged that he was a duly licensed house mover, had duly executed his bond and had secured a permit duly issued by the proper authority for the moving of the buildings specified; that for twenty-five years it had been the universal custom to use the public streets in removing buildings from one part of the city to another; that relying on his right to remove the buildings he had entered into the contract, and if prevented from fulfilling it within a specified time he would be damaged in the sum of $1,000. He further alleged that plaintiffs had no vested rights under the ordinances of the city, and were illegally occupying certain of the streets named, because by Ordinance No. 1,765 every company or individual was required to remove before January 1, 1897, all electric light or power wires or cables, or the poles and appliances used in connection therewith, in the streets, alleys, and public grounds mentioned in that ordinance; that the ordinance was still in force; that plaintiffs had wholly failed and neglected to comply with its terms and were now unlawfully and improperly occupying the streets with their poles and electric wires for the transmission of

light and power. The reply alleged that Ordinance No. 1,765 had no reference to the poles and wires referred to in the complaint.

From an order, Hallam, J., restraining defendant Blomquist from cutting any of plaintiffs' wires, requiring that he give plaintiffs twenty-four hours' notice of the necessity of cutting their wires, and give bond to indemnify them for the cost of such cutting and readjustment, he appealed. Affirmed.

Oscar F. Christensen and T. R. Kane, for appellant.

How, Butler & Mitchell, for respondents.

LEWIS, J.

Appeal from an order of the district court of Ramsey county directing that a writ of injunction issue restraining appellants from cutting any of the electric wires, or from removing, adjusting, or otherwise interfering with any wires or lamps belonging to respondents suspended along the route over which appellant, Blomquist, was proceeding to move a certain building.

On June 7, 1909, the commissioner of public works issued a permit to appellant, Blomquist, to move a two-story frame building, owned by defendant Johnston, from the north side of Fifth street, lot 9, block 7, Rice & Irvine's addition, to the north side of Walnut street, on lot 9, block 10, Dayton & Irvine's addition to St. Paul, over the following route: "On Fifth street to Smith avenue, and thence on Smith avenue to Walnut street to destination." The permit contained the following restriction: "This permit does not allow interference with wires or any other obstructions on above route."

Appellant was about to proceed with the moving of the house, when respondent secured a temporary writ of injunction, and the matter came on for final determination before the court, and on August 12, 1909, an order was issued for a permanent injunction restraining appellant, Blomquist, "from cutting or severing any wires belonging to the plaintiffs, carrying electricity, which may be suspended along said route, * * * from removing or adjusting or otherwise interfering with any of said wires or lamps, unless said defendant shall first give plaintiffs twenty-four hours' notice in writing of the necessity for so doing, to the end that plaintiffs may have an oppor-

tunity of furnishing men and appliances for proper adjustment of said wires, lamps, and equipment, and unless said defendants shall furnish a bond, to be approved by this court, indemnifying plaintiffs against any cost or expense incurred by plaintiffs in the removal, adjustment, or readjustment of said wires, lamps, and equipment."

In 1883 the common council of the city of St. Paul passed an ordinance, known as the "Building Code," which was amended in 1901, and provided: "Any building may be removed from one lot to another outside the fire limits, but any new work must be in compliance with this Code. No person except a licensed house mover shall remove any building within the city limits. * * *." The ordinance further provided that the party applying for a license to move houses should give a bond in the sum of $1,000, running to the city, conditioned to indemnify it from all damages that might accrue from injury to streets, trees, pavements, telegraph poles, wires, etc., and further provided that "upon execution of said bond, and its approval by the corporation attorney, a license shall be issued, and the said licensed person shall in each and every instance, before removing any building, obtain a permit to do so from the commissioner of public works, stating specifically all the conditions, prescribing the route to be taken, and limiting the time for the removal."

Subsequent to the passage of this house-movers ordinance, and long prior to the issuing of the permit to appellant, respondent companies were duly authorized by the city council to occupy the streets of the city with poles and wires and to maintain the same for the purpose of furnishing electricity to the city and its inhabitants, and at the time of the issuing of the permit respondents had erected and were maintaining at the corners of the streets along the route designated in the permit certain arc lamps and the necessary feed wires and attachments connected therewith.

Appellant's position in this court is that the qualification in the order for injunction, requiring payment of the expense of adjusting the lamps and wires, was an unauthorized restriction upon his legal rights. The proposition is stated in appellant's brief as follows: "Appellant contends most respectfully that his right to use and occupy the space above the public streets in the lawful perform-

ance of his profession as a house mover is coequal and coextensive with the rights of respondents, and antedates them in point of time; that his rights in this regard were fixed and defined by public law at the time respondents accepted their franchise; and that if, under such conditions, respondents so suspended their wires as to constitute an obstruction to this appellant while engaged in lawfully conducting his labors as a house mover, then it becomes the duty of said respondents, at their own expense, to remove said obstructions temporarily whenever the necessities of appellant's business require such removal."

This claim assumes that both parties have the right to occupy the streets for the purpose of conducting their business, subject only to the right of reasonable regulation. Such is not the law. The use of streets for moving houses is an unusual and extraordinary one. Kibbie v. Landphere, 151 Mich. 309, 115 N. W. 244, 16 L.R.A.(N.S.) 689; Northwestern Co. v. Anderson, 12 N. D. 585, 98 N. W. 706, 65 L.R.A. 771, 102 Am. St. 580; Day v. Green, 4 Cush. (Mass.) 433; Williams v. Citizens, 130 Ind. 71, 29 N. E. 408, 15 L.R.A. 64, 30 Am. St. 201; Millville v. Goodwin, 53 N. J. Eq. 448, 32 Atl. 263; Keating v. Macdonald, 73 Conn. 125, 46 Atl. 871; Harcourt v. Common Council, 62 N. J. L. 158, 40 Atl. 690. Authority to use the streets for the erection of poles and wires, and for moving houses, is vested in the city authorities, and without such authority there is no right. Eureka City v. Wilson, 15 Utah, 53, 48 Pac. 41; Wilson v. Eureka City, 173 U. S. 32, 19 Sup. Ct. 317, 43 L. Ed. 603. Respondents secured no vested rights to occupy the streets with their wires, poles, and lights, except as provided by the franchise in pursuance of which the same were erected; and appellant acquired no rights in the streets for the purpose of conducting his business of house mover, except as specified and limited by the ordinance and the permit. At the time appellant applied for his permit, respondents were in lawful possession of the streets for the purpose of maintaining the wires and lamps involved in this action, and appellant has no standing to contest that right, unless upon the ground of an equal or prior right by virtue of the ordinance under which he was licensed to do business.

The house-movers license ordinance simply permits the removal of a building from one lot to another outside the fire limits, and requires that, before any licensed house mover shall move any house, he shall give a bond and secure a permit from the commissioner of public works. No absolute right to use the streets is conferred upon those who may take out a license. The ordinance reserves the right of supervision for the protection of public and private property, and the commissioner was vested with authority to prescribe the route and the conditions upon which a permit might be issued. The powers thus delegated to the commissioner are ministerial, and not legislative. 28 Cyc. 277, and cases above cited.

Appellant stands in this court upon his strict legal right to require respondents to remove their wires at their own expense, upon reasonable notice. In this he is mistaken. His right to use the streets is restricted by the permit, and there is no legal ground for the demand he makes. Whether respondents might have been compelled by the city council to take care of the wires and lamps at their own expense in such case is not involved in this action. The condition upon which the trial court issued the injunction requiring notice of twenty-four hours and payment of the expense attending the adjustment of the wires and lamps was all that appellant could reasonably expect under the permit, and he has no legal ground for complaint.

Affirmed.

On April 15, 1910, the following opinion was filed:

PER CURIAM.

Application for reargument was made by both parties upon the ground that the court had failed to definitely pass upon the relative rights of the respective parties under the building code ordinance, as amended in 1901, under which appellant claimed to act, and the ordinance conferring upon respondent the right to occupy the streets of the city with its poles and wires.

There should be no misunderstanding about the views of the court in this case. It was held that the erection of wires and poles, and the moving of houses along the streets of the city of St. Paul were not among the ordinary uses for which streets were intended, and that

neither appellant nor respondent had rights in the streets for such purposes except as authorized by the city authorities. We also held that at the time in question the electric company was lawfully in possession of the streets with its poles and wires in the designated route, and that appellant had no authority by virtue of the building code, without a permit, to require respondent to remove the wires at its own expense when called upon to give free passage to appellant in the house-moving business.

It was not held that respondent was possessed of vested rights in the streets not subject to reasonable regulation. It was not held that the city authorities could not, by a proper license, or permit, confer upon appellant the right to require respondent, upon reasonable notice, to open the wires at its own expense for the purpose of allowing the passage of houses in the streets. But whether he would have such rights had an unconditional permit been issued to him, is a question not presented and not decided.

It was held, however, that the only authority which appellant had to occupy the streets for the passage of the houses in question was by virtue of the permit issued by the commissioner of public works, with the condition attached, and appellant's authority under the permit having been restricted to noninterference with wires, and other property, he could not complain of the restrictions and conditions imposed by the order of the trial court.

Former decision adhered to.