## M. J. HOWARD v. MINNEAPOLIS & ST. PAUL SUBURBAN RAILROAD COMPANY.[1]

June 3, 1927.

No. 25,943.

**Defendant not liable for injury caused when stranger fell from one of its poles.**

1. The mere fact that a street car company made no objection to the attachment of a city's fire alarm wire to one of the company's poles imposed no liability on the company for the maintenance of the pole in such a condition that appellant, who was not an employe of the city, might safely go upon the pole to repair the wire after he had broken it.

**Plaintiff was not furthering interests of defendant.**

2. In attempting to replace the wire the appellant was not furthering the interests of the respondent, who is not liable for injuries sustained by appellant when the pole broke.

Street Railroads, 36 Cyc. p. 1499 n. 33 New.

See note in 45 L. R. A. (N. S.) 303; 9 R. C. L. Supp. 945.

Action in the district court for Washington county to recover damages for personal injuries. There was a directed verdict for defendant, and plaintiff appealed from an order, Stolberg, J., denying his motion for a new trial. Affirmed.

*J. N. Searles, Edward Thelen,* and *George G. Chapin,* for appellant. *Sullivan & Neumeier,* for respondent.

[1] Reported in 214 N. W. 658.

LEES, C.

In this action the court, at the close of the evidence, directed a verdict in respondent's favor and an appeal was taken from an order denying a new trial.

For a statement of most of the material facts see Howard v. City of Stillwater, supra, page 391. The pole referred to in the companion case carried a span wire running across the street to support a trolley wire used in the operation of respondent's street car line. The fire alarm wire was attached to the pole in question without respondent's express consent. The evidence shows that similar attachments of the wire to respondent's poles had been made in several other places in the city, some of them at least six years before the accident. While respondent never gave the city permission to use its poles, it did not object; and it is a fair inference that it must have known of the use which the city was making of them.

The theory upon which appellant seeks to charge respondent with liability may be thus stated: The proximate cause of the injury was the defective pole. The defect was hidden. To its own employes respondent owed a duty to use ordinary care to maintain the pole so that it would be safe to go upon it in case a wire attached thereto had to be repaired. This duty carried with it an obligation to inspect and test the pole for defects. The duty extended to any person employed or authorized by the city to repair its wires attached to the pole, since the effect of respondent's conduct was to give consent to the city's use of the pole.

On the other hand, respondent contends that not only did it not invite appellant to go upon the pole for any purpose, but that he was at most a licensee to whom respondent owed no duty whatever.

We think it cannot be gainsaid that the mere fact that the city was permitted to attach its fire alarm wire to the pole did not impose liability on respondent for the maintenance of the pole in a safe condition for the use of the city's employes. It may be that the permission amounted to a license to them to go upon the pole to repair the fire alarm wire. But if this be granted, appellant is no better off, for it is well settled that as to mere licensees the owner of a building or other structure owes no duty except to avoid ex-

posing them wilfully to the risk of injury.    Mazey v. Loveland, 133 Minn. 210, 158 N. W. 44, L. R. A. 1916F, 279; Landy v. Olson & Serley S. & D. Co. infra, page 440.

The respondent did not invite appellant to repair the wire.    Its interests were not furthered by anything the appellant did or attempted to do.    It was appellant's act which caused the wire to break.    He volunteered to repair it.    At most his conversation with the chief of the fire department gave him permission to repair it. He was not authorized to climb the pole.    Indeed it was not necessary to do so to put the ends of the wire together and raise it above the ground and out of the way of passersby.

Appellant cites such cases as McDonald v. Cuyuna R. P. Co. 144 Minn. 271, 175 N. W. 109, holding that the owner of private property may not create a pitfall near a path over which he permits the public to travel without liability to a person falling into it.    These cases are not in point.    They illustrate the application of the doctrine of Heaven v. Pender, 11 Q. B. D. 503, which is substantially this: Whenever a person is placed in such a position toward another that, if he does not use ordinary care in his own conduct with regard to the circumstances in which the other is placed, he will cause danger of injury to him, a duty arises to use ordinary care to avoid exposing him to such danger.    See O'Brien v. American Bridge Co. 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. 503; Staley v. Theo. Hamm Brg. Co. 142 Minn. 399, and cases cited on p. 404, 172 N. W. 491, 493.    Here the respondent had not given permission to anyone but its own employes to climb the pole.    It would be carrying the application of the doctrine of Heaven v. Pender altogether too far to hold that, because the owner of a pole makes no objection to the attachment of a wire thereto, he becomes subject to the duty of exercising reasonable care to maintain the pole in a safe condition for the use of anyone attempting to repair the wire.

Reliance is placed on Moersdorf v. New York Tel. Co. 84 N. J. L. 747, 87 Atl. 473, but the case is clearly distinguishable.    Here the city had reserved no right to use respondent's poles and gave no consideration for the use it made of them, whereas in the case cited

the telephone company's right to maintain the poles was conditioned upon a grant to the city of the right to use them to maintain its own wires.

Neither is Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A. (N. S.) 449, Ann. Cas. 1912A, 247, in point, for there the electric company was given the right to place its wires on the city's bridge and both were held to be responsible for the manner in which the wires were maintained.

This is a case more nearly like Collar v. Bingham Lake R. Tel. Co. 132 Minn. 110, 155 N. W. 1075, L. R. A. 1916C, 1249, for it was not the duty of the respondent to remove the wire from the street after appellant broke it. In attempting to remove it appellant was not performing a service for or furthering the interests of the respondent. The facts here are such that the reasoning in the Collar case is controlling.

See also Heskell v. Auburn L. H. & P. Co. 209 N. Y. 86, 102 N. E. 540, L. R. A. 1915B, 1127, where it was held, under circumstances quite similar to those existing here, that a telephone company, using a pole of an electric light and power company by sufferance, was a mere licensee, and that when an employe of the telephone company went upon the pole the only duty the electric company owed him was to abstain from wantonly or wilfully injuring him.

Order affirmed.