HOMMEL, Respondent, vs. BADGER STATE INVESTMENT COM-
PANY, Appellant.

*October 25—November 13, 1917.*

*Negligence: Unsafe public building: Step near inner doors: Injury to*
*person entering: Contributory negligence: Question for jury:*
*Evidence: Special verdict: Form of questions: Expert testimony:*
*Value of services: Trial: Harmless errors: Excessive damages.*

1. Whether plaintiff—who was injured by tripping upon a five-inch
   step, in the vestibule of a public building, located four inches in
   front of the bottom of swinging doors leading to the lobby which
   she was about to enter—was guilty of contributory negligence,
   is *held*, upon the evidence, to have been a question for the jury.
2. A person is not absolutely bound to see every defect in his path-
   way which is plainly observable, nor to remember the existence
   of a defect of which he has knowledge. Any reasonable excuse,
   in view of the whole situation, for not doing so is sufficient to
   raise a jury question.
3. Direct proof of diversion of attention is not required in such a
   case, evidence of circumstances from which such diversion is
   fairly inferable being sufficient.
4. Although a question in the special verdict, as to whether the
   building in which plaintiff was injured was "so constructed as
   to be as safe to tenants or the public using it as the use thereof
   would reasonably permit," would better have been confined to
   the precise circumstances of the case (*i. e.* of a person entering
   the building), yet, the jury having evidently answered it with
   reference to such circumstances, there was no prejudicial error
   in the form of the question.
5. As bearing upon the question above stated, an expert was prop-
   erly permitted to testify as to whether it was good practice to
   construct a step such as the one upon which plaintiff tripped.
6. Such expert having testified that the placing of inside doors close
   up to the edge of a step was likely to cause stumbling and that
   such construction was not in accord with good practice of archi-
   tectural construction "because it is dangerous," the refusal of
   the trial court to strike out the quoted words was not a preju-
   dicial error, since the jury would have understood that to be the
   reason even if the witness had not so testified.
7. The admission of immaterial evidence to the effect that, prior to
   the accident, the attention of an officer of the owner corporation
   had been called to the condition of the step in the vestibule was

not a prejudicial error in this case, since the evidence could have influenced the jury only upon the question of damages and a large reduction in the amount found by the jury was made before judgment.

8. Plaintiff's counsel, in the presence of the jury, offered to show that other accidents had occurred at the place in question and persisted in asking a witness in respect thereto. The trial court, however, ruled out all such evidence, specifically directed the jury to disregard the statement of counsel, and also instructed them, in respect to certain testimony that after the plaintiff's injury the entrance to the building had been so changed as to eliminate the step, that such evidence should not be considered in determining whether the entrance was dangerous at the time of said injury. *Held*, that there was no error which affected the substantial rights of the defendant. Sec. 3072*m*, Stats.

9. In assessing damages for a severe injury to a woman, resulting in disability and great pain, the jury was properly permitted to consider the testimony of her daughter-in-law, who nursed and took care of her, as to the value of such services, the witness being a woman of considerable experience though not shown to have expert knowledge as to such value. In any event, if there was error in respect to such evidence it was cured by a large reduction in the damages found.

10. The standard to be used in measuring the fair value of the services of the daughter-in-law in such case was the amount customarily charged for similar work.

11. An award of $8,000 (reduced by the trial court from $11,000) for severe injuries to a woman sixty-two years old whose earning power, of about $800 per year, was thereby largely permanently destroyed, who suffered great pain for a long time and would probably suffer pain and incur expense for care as long as she lived, is *held* not so excessive that it should be disturbed on appeal.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed.*

Action to recover compensation for personal injuries.

Plaintiff, a widow, who customarily earned $12 to $15 per week, and for about six months in the year, $25 per week, about 5:45 p. m. of November 18, 1915, while passing through the only entrance of the Merrill Building in the city of Milwaukee leading to a cafeteria therein on the second

floor, tripped on an inner step and fell to the floor of the lobby and was severely injured. The structure was a public building within the meaning of sec. 2394—48, Stats., as it existed at the time of the injury, which provided as follows:

"Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

The evidence was to this effect: Plaintiff was entitled to the protection of the statute. It was defendant's duty to comply with the provisions thereof in regard to the safety of the entrance. She had entered the building where the accident occurred several times prior thereto, but, by reason of changes at the entrance, its condition at the particular time was materially different from what she was familiar with. There were double outside doors swinging outward. Inside thereof, there was a vestibule about five feet square. At the far side of the vestibule there was a step five inches high made of marble, of a different color than the floor of the vestibule and that of the lobby beyond. Located about four inches back of the edge of the step there were double doors, hung so as to swing both ways. Then came a lobby with a stone floor. The vestibule was lighted on the occasion in question. Plaintiff opened one of the outer doors and stepped into the vestibule. She then stepped to where it was necessary to open one of the inner doors in order to go into the lobby. Supposing the floor of the lobby to be on a level with the floor of the vestibule, but not taking any particular observation of the situation, after opening one of the inner doors by pushing it inwardly, she moved forward and was tripped by the step, causing her to fall and fracture her left femural bone and otherwise injured her left leg. She suf-

fered much pain, was confined to her bed at a hospital for six months, and then and thereafter, up to the time of the trial, she was compelled to have much attention by a physician and nurse and suffered much pain.    She was rendered partially helpless for life and her earning power for about one year and three months was totally destroyed and was, to a great extent, permanently impaired.    Her hospital bill was $881, doctor bill $442, and she incurred expense for care by her daughter-in-law from the 3d day of May, 1916, to the time of the trial which was testified to by the latter to be reasonably worth $30 per month.

The cause was submitted to the jury for a special verdict and they rendered the following:

"(1) Was the entry to the Merrill Building as it existed on November 18, 1915, so constructed as to be as safe to tenants or the public using it as the use thereof would reasonably permit?    A. No.

"(2) If you answer the first question 'No,' then answer this question: Was such fact the proximate cause of plaintiff's injury?    A. Yes.

"(3) Was the plaintiff guilty of any want of ordinary care which proximately contributed to produce her injury? A. No.

"(4) At what sum do you assess plaintiff's damages? A. $11,000."

Various motions were made on behalf of defendant including a motion to set aside the verdict as excessive.    The motions were denied on condition of plaintiff consenting to a reduction of the amount of damages as found by the jury to $8,000, and the motion on behalf of plaintiff for judgment on the verdict was granted conditioned on consent being given to a reduction as stated.    In due course judgment was rendered in plaintiff's favor pursuant to such determination, from which this appeal was taken.

For the appellant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Willet M. Spooner* and *Leo Mann,*

of counsel, all of Milwaukee, and oral argument by *Mr. Spooner* and *Mr. Mann.*

.For the respondent there was a brief by *Umbreit, Mahon & Jenner* of Milwaukee, and oral argument by *A. C. Umbreit.*

MARSHALL, J. Does the evidence conclusively show respondent to have been guilty of contributory negligence? Counsel for appellant contend that it does and that the trial court erred in not granting a motion made on the trial for a directed verdict in appellant's favor on that ground, and in not granting a motion made on such ground for judgment in its favor notwithstanding the verdict.

All evidence bearing on the subject of whether respondent was guilty of contributory negligence has been carefully considered resulting in a conclusion that the trial court was not clearly wrong in holding that it presented a fair jury question. It is needless to indicate the nature of the evidence with much, if any, greater fulness than has been done in the statement. The jury was warranted in coming to the conclusion therefrom that respondent was not familiar with the situation, particularly, that she had not seen the inner doors nor the step which came out but four inches from the bottom thereof; that when she opened the outer door and stepped through, clear of the return swing of it, into the vestibule, she was so suddenly confronted by the inner doors which she momentarily reached, that her attention to her pathway was, for the instant, diverted thereby; that her attention was more easily than ordinarily so diverted because she was intent upon the object of her journey to the cafeteria on the floor above, the stairway leading to which came into her view instantly upon the inner door being pushed in the direction she was going. Under all those and other circumstances, particularly the fact that the location of the step in connection with that of the inner doors created a

dangerous situation which, because of the statutory obliga-
tion of appellant, she had no reason to think might probably
exist, it was not so conclusively inconsistent with due care
for her to push inwardly the door and quickly attempt to
step forward, supposing the floor of the vestibule and that
of the lobby were on the same level, as she undoubtedly did,
that the question of contributory negligence should have been
taken from the jury.

True, in case of a defect in the pathway of a traveler be-
ing known to him or in plain sight, yet he is injured by it,
the ordinary presumption of due care on his part is thereby
changed to a rebuttable presumption of want of such care,
and evidence of some reasonable excuse for not observing
and avoiding danger from the defect is necessary in order
to carry the question in regard thereto to the jury.    One is
not bound, absolutely, to see every defect in his pathway
which is plainly observable nor to remember the existence of
such a defect of which he has knowledge.    Any reasonable
excuse, in view of the whole situation, for not doing so is
sufficient to raise a jury question in regard to the matter.
Such slight circumstances may be fairly considered by a
jury to be sufficient, that the issue in regard to such a matter
is seldom taken from the jury.    *Bohn v. Racine,* 119 Wis.
341, 96 N. W. 813; *Crites v. New Richmond,* 98 Wis. 55,
73 N. W. 322; *Wheeler v. Westport,* 30 Wis. 392; *Collins v.
Janesville,* 111 Wis. 348, 87 N. W. 241, 1087; *Coppins v.
Jefferson,* 126 Wis. 578, 105 N. W. 1078.    In the last case
cited, referring to the *Collins Case,* it was said that the pre-
sumption of want of due care from failure of a person to
avoid danger from a known defect in his pathway or one
plainly observable by him "is one which yields readily to any
reasonable explanation" so as to raise a jury question.

To prove a diversion of attention, in a case of this sort,
does not require direct proof thereof.    Evidence of circum-

stances from which such diversion is fairly inferable is sufficient. In our judgment there was such proof, in this case, direct and circumstantial, as to preclude holding that the trial court was clearly wrong in declining to rule in appellant's favor in respect to the issue in question.

The next assignment of error is that the form of the first question should have been confined to whether the entry to the building was so constructed as to be as safe to tenants or the public entering it as the use thereof would reasonably permit instead of "as safe to tenants or the public using it as the use thereof would reasonably permit." The claim is that though respondent was injured while entering the building, the evidence, in the main, was directed to whether the situation was unsafe for persons going out of it. As we read the record, the evidence covered the matter of whether the condition was unsafe for persons entering the building as well as going out of it. While it were better to have confined the question to the precise circumstances of the case, the jury evidently answered it with reference to such circumstances, so appellant was not prejudiced by the general form of the question. That is evident from the fact that they found that the unsafe condition of the entry was the proximate cause of plaintiff's injury and, further, from the fact that the court instructed them to deal with the subject, solely from the standpoint of one going into the building.

Further error is assigned because the court permitted expert evidence as to whether it was good practice to construct a step such as the one in question, as bearing on the question of whether, under the circumstances, the entry was so constructed as to be as safe to tenants or the public using it as the use thereof would reasonably permit. The evidence was proper. The subject was peculiarly one for expert evidence. It related to whether, from an architectural standpoint, the place was as safe as its use would reasonably permit.

. .Further error is assigned because a well qualified expert who had testified, without objection, that the placing of inside doors close up to the edge of a step, as in this case, was likely to cause stumbling, was then permitted to state that such construction "was not in accord with good practice of architectural construction" and the trial court refused to strike out the conclusion of the witness that it was not so in accord "because it is dangerous." As before said the expert evidence that such construction was architecturally defective was proper. The evidence might well have stopped at that point but if there were any error in respect to the matter, clearly, appellant was not prejudiced because the obvious reason why, in the opinion of the expert, the construction was defective was because it was dangerous, and the jury would so have understood if the witness had not so testified.

Error is also assigned because the court permitted testimony by one witness that prior to the accident the attention of an officer of appellant was called to the condition of the step in the vestibule. Of course, whether appellant had notice of such condition or not was immaterial. However, it is considered that the evidence was not prejudicial in that, had it been omitted the verdict might probably have been more favorable to appellant. If it affected the case at all it was by prejudicing the jury so as to influence them on the question of damages. If it had such effect the trial court evidently endeavored to cure the matter by the large reduction of the damages found.

Complaint is made because respondent's counsel offered, in the presence of the jury, to show that other accidents had occurred at the particular place before the one in question, and persisted in asking a witness in respect to that matter. Such course was evidently taken by counsel in good faith. The jury at the outset was specifically directed to disregard the statement of counsel as to what he expected to prove in

respect to prior accidents. All questions in that regard were ruled out, and when the court came to instruct the jury they were told, in respect to some testimony which was introduced to the effect that, at some time after the accident, a change was made in the entrance so as to eliminate the particular feature, that such evidence should not be considered in respect to whether the entrance was dangerous at the time of the accident. Under those circumstances it does not seem reasonably probable that, if there were errors in respect to the matters referred to, they were prejudicial to appellant under the rule as to what constitutes prejudicial error under sec. 3072m, Stats., which provides that

"No judgment shall be reversed . . . on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

That was intended to emphasize, if not extend, sec. 2829, Stats., and the effect of it has been to greatly liberalize the practice in favor of the stability of judgments, rendering decisions to the effect that prejudice is to be presumed from the occurrence of error wholly inapplicable. The rule now is that a judgment will not be disturbed on appeal unless it clearly appears that, had the error complained of not occurred, the result might probably have been materially more favorable to the adverse party. *Barlow v. Foster,* 149 Wis. 613, 136 N. W. 822; *Burns v. State,* 145 Wis. 373, 383, 128 N. W. 987. The statute is a very beneficent one and the court has been disposed to give full effect thereto in letter and spirit.

What has been said as to the effect of the statute, renders it unnecessary to discuss numerous cases cited to our atten-

tion as to fatal effect of offering, in the presence of the jury, to prove matters which are improper, and inability of the trial court, under some circumstances, to cure improper conduct of counsel. By this, it is not intended to suggest that there was error or improper conduct calling for curative action by the trial court, only that if there were such there was efficient curative action in respect thereto.

The claims that the court erred in refusing to change answers in the special verdict and in refusing to set aside the verdict and grant a new trial and in refusing to grant judgment in defendant's favor notwithstanding the verdict, are sufficiently dealt with by the foregoing, leaving only the question raised as to whether the verdict as reduced from $11,000 to $8,000 is excessive. The respondent was sixty-two years of age. She seems to have been severely injured. She had earning power to the extent of $800 per year. That was, largely, permanently destroyed. Her expectancy of life was about twelve years. The amount required to purchase for her an annuity large enough to repair the loss of her earning power would probably amount to four or five thousand dollars. There was loss of earnings with expenses incurred up to the time of the trial of nearly $3,000. The probabilities are that, because of her disability, she will have to incur expense for care as long as she lives. She evidently suffered great pain for a long period and will probably suffer more or less the remainder of her life. In view of the whole situation, we are unable to conclude that the trial court was clearly wrong in permitting a recovery of $8,000. We do not overlook the claim of counsel that the court erred in permitting the jury to consider the evidence of the daughter-in-law on the question of the value of her services as a nurse because she was not shown to have expert knowledge of the matter. She knew better than any one else could know the nature of the service required by respondent. She was a woman of considerable experience and doubtless had, under

all the circumstances, a better idea of the fair value of her own services, measured by what is customarily charged for similar work, which was the standard to go by, *Adams v. Bucyrus Co.* 155 Wis. 70, 80, 143 N. W. 1027, than the jury could have had. It is considered that it was proper for the jury to pass upon the matter upon her evidence and all the other evidence in the case as they were, in effect, directed to do. In any event, if any prejudicial error was committed in respect to the subject, it was cured by the reduction of the verdict from $11,000 to $8,000.

*By the Court.*—The judgment is affirmed.